## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

CHRISTOPHER L. AMERSON,　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　Plaintiff,　　　　　:
　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　:　　Case No. 5:24-cv-149-MTT-AGH
　　　　　　　　　　　　　　　　　:
COMMISSIONER TYRONE　　　　　　:
OLIVER, *et al.*,　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　Defendants.　　　　 :

_____

### <u>ORDER AND RECOMMENDATION</u>

Plaintiff filed a Recast Complaint (ECF No. 21) which is now ripe for review pursuant to 28 U.S.C. § 1915A and § 1915(e).  As discussed below, the undersigned **GRANTS** Plaintiff's pending motions to proceed *in forma pauperis* (ECF Nos. 2, 11), but **RECOMMENDS** that Plaintiff's claims arising from his treatment at Telfair State Prison ("TSP") be **DISMISSED without prejudice** for improper joinder. The following claims arising from Plaintiff's treatment at Macon State Prison ("MSP") shall proceed for further factual development: (1) claims that Defendants McDaniel, Jefferies, Black, Pope, Troutman, Hudson, and Oliver were deliberately indifferent to the dangerous conditions at MSP; (2) claims that Defendants Troutman, Black, and Jefferies were deliberately indifferent to his safety when they denied his requests for protective custody at MSP; and (3) claims regarding insufficient lighting against Defendants Troutman, Pope, McDaniels, Black, Jefferies, and Oliver.  It is also **RECOMMENDED** that his remaining claims against those Defendants be

**DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. Plaintiff's "Motion for Entry of Filing by Clerk" (ECF No. 26) is **DENIED as moot.**

## MOTION TO PROCEED IN FORMA PAUPERIS

Given the Court's ruling that Plaintiff sufficiently alleged that he is in imminent danger of serious physical injury, *see* Order 3, Jan. 28, 2025, ECF No. 18, Plaintiff's pending motion to proceed *in forma pauperis* ("IFP") cannot be denied pursuant to 28 U.S.C. § 1915(g). A review of the motion shows that Plaintiff cannot now pay the filing fee, and his motions to proceed IFP (ECF Nos. 2, 11) are **GRANTED.** However, a prisoner allowed to proceed IFP must still pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets in his trust account, he must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

## I.      Directions to Plaintiff's Custodian

Plaintiff is required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee.  The clerk of court is **DIRECTED** to send a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated.  It is **ORDERED** that the warden of the institution in which Plaintiff is incarcerated, or the sheriff of any county in which he is held in custody, and any successor custodians, shall each month cause to be remitted to the clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full.  28 U.S.C. § 1915(b)(2).  In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is authorized to forward payments from the prisoner's account to the clerk of court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.  It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.     Plaintiff's Obligations Upon Release

Plaintiff should keep in mind that his release from incarceration/detention does not release him from his obligation to pay the installments incurred while he was in custody.  Plaintiff remains obligated to pay those installments justified by the income in his prisoner trust account while he was detained.  If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on

these payments by any means permitted by law. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## MOTION FOR ENTRY OF FILING BY CLERK

Plaintiff also filed a motion (ECF No. 26) asking the clerk to send Plaintiff a file-stamped copy of his March 16, 2025 Declaration and "Letter Exhibit," documents that appear to have been filed on March 31, 2025 (ECF No. 23). On April 21, 2025, Plaintiff mailed a letter to the Court requesting copies of these documents (ECF No. 24). In response to this letter, the clerk's office advised Plaintiff that the clerk was "unable to return copies by mail unless a self-addressed stamped envelope is included." Letter from Case Adm'r, ECF No. 25. Plaintiff replied with another letter acknowledging receipt of the clerk's instructions and including a self-addressed envelope with postage (ECF No. 27). The same day, the clerk mailed Plaintiff a copy of the desired documents. Plaintiff's motion (ECF No. 26) is thus **DENIED as moot.**

## PRELIMINARY SCREENING OF PLAINTIFF'S RECAST COMPLAINT

### I.    Standard of Review

The PLRA directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a). Courts must also screen complaints filed by a plaintiff proceeding IFP. 28 U.S.C. § 1915(e). Both statutes apply in this case, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael*

4

*v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (citations omitted). A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere

5

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

## II.   Factual Allegations

Plaintiff's claims arise from his incarceration in the Tier units at MSP and TSP. Recast Compl. 6, ECF No. 21. As best as the Court can tell, Plaintiff was housed at MSP in 2023, and it appears he transferred to TSP in early May 2024. *See id.* at 9-10. Plaintiff's claims are discussed in relevant detail below, but his claims generally fall into five categories: (1) deliberate indifference to Plaintiff's safety; (2) unlawful conditions-of-confinement; (3) improper or excessive use of force; (4) failure to follow prison grievance procedures; and (5) deliberate indifference to Plaintiff's serious medical needs. Plaintiff raises these claims against six individuals at MSP: Tier Unit Manager Gracie Troutman; Tier Warden of Security Charles Hudson; Deputy

6

Warden of Security Derrick McDaniel; Tier Unit Manager Solomon Pope; Chief Counselor Deirdra Black; and Warden of Care and Treatment Curtis Leroy Jefferies, Jr. (the "MSP Defendants"). Compl. 5, ECF No. 1. He also sues six individuals at TSP: TSP Warden Andrew McFarlane; Tier Warden Rickey Wilcox; Tier Unit Manager Hunt; Warden of Care and Treatment Keith; Chief Counselor Johnson; and Tier Lieutenant Chambers (the "TSP Defendants"). *Id.* Finally, Plaintiff sues Tyrone Oliver, the Commissioner of the Georgia Department of Corrections ("GDC"). *Id.* As a result of the constitutional violations he alleges, Plaintiff seeks declaratory and injunctive relief; compensatory, punitive, and nominal damages; a jury trial; costs; and "addi[]tional relief this Court deems just proper and equitable." *Id.* at 7-8.

## III.    Plaintiff's Claims

### A.    Improper Joinder

As an initial matter, the Court finds that the claims and Defendants in this case are not properly joined. When faced with a multi-party, multi-claim lawsuit— particularly one filed by a *pro se* litigant who has been identified as a three-striker, such as Plaintiff—the Court must question the propriety of joinder. *See, e.g., George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The Federal Rules of Civil Procedure permit a plaintiff to join only related claims and defendants in a single complaint. To properly join defendants under Federal Rule of Civil Procedure 20(a)(2), the plaintiff must establish that he is asserting a right to relief against them "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and that "any question of law or

fact common to all defendants will arise in the action." Once a plaintiff has established that each defendant is properly joined, only then may he join as many claims as he has against each party per Federal Rule of Civil Procedure 18(a). *See, e.g.*, 6A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1585 (3d Ed. May 2025) ("Once parties are properly joined under [Rule 20] as to a particular claim, additional claims, whether they are related or unrelated or they are by or against all or less than all of the parties may be joined under Rule 18(a).").

The Eleventh Circuit applies the "logical relationship" test to determine whether claims arise from the same transaction or occurrence for joinder purposes. *See, e.g., Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic Health Corp. v. Lifemark Hosp. Corp. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)).[1] "Under this test, there is a logical relationship when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Republic Health Corp.*, 755 F.2d at 1455 (quotation marks and citation omitted). In exercising its discretion regarding joinder, the Court should "provide a reasoned analysis that comports with the requirements of the Rule" and "based on the specific fact pattern presented by the plaintiffs and claims before the court." *Hagan v. Rogers*, 570 F.3d 146, 157 (3d Cir. 2009).

---

[1] The standard for whether claims arise from the same transaction or occurrence for Rule 20 purposes is the same as that used for compulsory counterclaims under Federal Rule of Civil Procedure 13. *See Smith*, 728 F. Supp. 2d at 1319.

To join the thirteen Defendants in this case, Plaintiff must first establish that he has "at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Wright *et al.*, *Federal Practice and Procedure* at § 1655.  He fails to do so.  Plaintiff suggests that "systemic health and safety issues" within the GDC caused the alleged constitutional violations.  *See, e.g.*, Recast Compl. 16.  But, Plaintiff complains about incidents which require the Court to analyze each individual Defendant's conduct and each Defendant's personal knowledge of Plaintiff's alleged conditions.  Plaintiff's vague allegations regarding systemic deficiencies are therefore insufficient to establish that joinder is proper.  *Skillern v. Ga. Dep't of Corr. Comm'r*, 379 F. App'x 859, 860 (11th Cir. 2010) (holding that plaintiff failed to demonstrate that claims against defendants arose out of the same transaction, occurrence, or series of transactions or occurrences where the only "connection between the people and events [the prisoner] described" was that the actions "showed indifference to his failing health"); *see also State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416-17 (10th Cir. 1984) (affirming denial of joinder where allegations against proposed defendant were "only tangentially related to the issues and series of transactions" in the pending case because "[d]ifferent elements of proof are required for the proposed cause of action, involving different questions of fact and law").  Joinder of all claims and Defendants in this case is thus improper.

Moreover, even if joinder was otherwise proper under Rules 18 and 20, the Court should exercise its discretion to deny it in this case.  "A district court may, in

its discretion, deny joinder even if the Rule 20(a)(2) requirements are met." *Dorsey v. Varga*, 55 F.4th 1094, 1103 (7th Cir. 2022). The Court's discretion to permit or deny joinder is informed by the PLRA and its goals of preventing unwieldy litigation, ensuring the payment of filing fees, and limiting prisoners' ability to bring frivolous cases. *See, e.g.*, *George*, 507 F.3d at 607. Thus, courts have held that prisoners subject to the three-strikes provision should not be able to circumvent that statute "by the creative joinder of actions." *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998); *see also George*, 507 F.3d at 607 ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees[.]"). Plaintiff has been identified as an abusive litigant under the "three-strikes" provisions of the PLRA, and his ability to file cases is thus limited. He was also clearly warned that he should "not join unrelated claims and defendants in a single action," and the standard for joinder was clearly set forth in the Court's order to recast. Order 4, Jan. 28, 2025, ECF No. 18. Moreover, despite the admonition that the Recast Complaint "should be no longer than **TEN** pages," *id.*, it is actually 18 pages.[2] Allowing Plaintiff to proceed with his Recast Complaint, as pleaded, would thus frustrate the purpose of the PLRA, overcomplicate this case, and thwart the Court's previous orders and instructions.

---

[2] Plaintiff numbered the pages explaining his claims from 1 through 10, Recast Compl. 9-18, but he did not count the pages of the Court's standard form (including one full page of the form that also explained his claims) or another handwritten page stating his claims for relief.

The Court cannot dismiss the entire Recast Complaint for improper joinder. Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action."). Instead, the Court should exercise its discretion to dismiss all claims arising out of Plaintiff's treatment at TSP.  *Daker v. Head*, 730 F. App'x 765, 768 (11th Cir. 2018) (holding that a district court should "exercise[] its authority under Rule 21 *sua sponte* to dismiss improper defendants and sever unrelated claims").  Plaintiff has only been housed at TSP since May 2024, and thus the statute of limitations would not bar Plaintiff from refiling any claims arising from his incarceration at that facility if he acts promptly to do so.  Because TSP is located in Telfair County in the Southern District of Georgia, it is also more appropriate for those claims to be heard in that court.  28 U.S.C. § 90(c)(2); *see also* 28 U.S.C. § 1404(a).  Those claims should be dismissed without prejudice to Plaintiff's refiling them in the appropriate district. *See* Fed. R. Civ. P. 21; *see also DirecTV, Inc. v. Leto*, 467 F.3d 842, 844-45 (3d Cir. 2006) (holding that "district judges have discretion to remedy misjoinders either by severing claims or dismissing them without prejudice").[3]

---

[3] While it may seem somewhat incongruous to allow only Plaintiff's claims against the MSP Defendants to proceed when his allegations of imminent danger were based largely on his treatment at TSP, the bar for finding "imminent danger" pursuant to 28 U.S.C. § 1915(g) is relatively low, and it is simply not the same as the standard for determining whether claims should be joined.  At any rate, Plaintiff's status as an abusive litigant, the purposes of the PLRA, and the fact that venue as to Plaintiff's TSP claims is more appropriate elsewhere outweigh any apparent incongruity.

B.    Claims arising from Treatment at MSP

1.    *Deliberate Indifference to Safety*

Turning to the claims properly before this Court, Plaintiff alleges that the MSP Defendants and Defendant Oliver have been deliberately indifferent to his safety at MSP.  Prison officials generally have a duty under the Eighth Amendment to protect the inmates under their care from harm inflicted by other inmates.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Id.* at 834.  Instead, a prisoner asserting this type of Eighth Amendment claim must allege "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard."  *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) (citation omitted).  To prevail, the prisoner must show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety."  *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane*, 835 F.3d at 1307).  There are two ways for an inmate to make this showing.  *Est. of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016).  First, an inmate may proceed on a "particularized threat" theory by attempting to show "that [he] was the target of a specific threat or danger."  *Id.*  Second, the inmate

may proceed on a "dangerous conditions" theory, which requires the inmate to "demonstrate that the prison conditions [he] was subjected to were so dangerous that they resulted in cruel and unusual punishment." *Id.* Under either theory, the inmate must face "a 'strong likelihood' of injury, 'rather than a mere possibility[.]'" *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).

To establish deliberate indifference, the plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 839).[4] The subjective component requires that the prison official be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference." *Marbury*, 936 F.3d at 1234 (alteration in original) (quoting *Rodriguez v. Sec'y of Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007)). The prison official must have "more than a generalized awareness of risk" to the prisoner. *Id.* (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101 (11th Cir. 2014)). A plaintiff can meet this standard in a dangerous conditions case by pleading facts showing that he is "confine[d] in a prison where violence and terror reign" and "serious inmate-on-inmate violence [is] the norm or something close to it," or by "point[ing] to specific features of a facility or its population rendering it particularly

---

[4] "Subjective recklessness" requires the defendant to be "actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff," although a defendant cannot be held liable for a constitutional violation if he responds reasonably to a risk of which he is aware. *Wade*, 106 F.4th at 1262.

violent." *Id.* at 1235 (quotation marks and citations omitted); *see also Dickinson v. Cochran*, 833 F. App'x 268, 274-75 (11th Cir. 2020) (holding that "*Marbury* makes clear" that "its violence-is-the-norm standard applies where a plaintiff alleges only a generalized risk and points to no 'specific features of a facility or its population rendering it particularly violent'" (quoting *Marbury*, 936 F.3d at 1235)).

Under the particularized risk theory, an inmate must establish that he provided prison officials with enough details about a specific threat to show "that prison officials could have reasonably inferred that there was a substantial, not merely possible, risk of harm." *Marbury*, 936 F.3d at 1237. This standard does not require an inmate "to identify the person who was threatening him by name, or even necessarily to give the defendants advance notice of a potential attack, so long as other facts put the defendants on notice that he faced a substantial risk of serious harm." *Id.* The objective component requires the prisoner to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in that he or she 'knew of ways to reduce the harm' but knowingly or recklessly declined to act." *Id.* at 1233 (quoting *Rodriguez*, 508 F.3d at 620).

Plaintiff first asserts claims under the "dangerous conditions" theory. He avers that MSP is significantly understaffed. Recast Compl. 10. Specifically, he contends there are not enough prison officials to staff the floor, conduct rounds every fifteen to thirty minutes as required by policy, or man the control booths. *Id.* Even when there are enough staff to conduct rounds, Plaintiff alleges prison guards "do not look in the cells to ensure the well being of inmates most times," and inmates who have been

injured or killed are not discovered in a timely manner. *Id.* Plaintiff contends "inmates are also being tied up and tourchered [sic]," "stabbings have been a daily issue on the Tier," and Plaintiff heard inmates call Defendant Troutman for help with no response. *Id.* Because of the prevalent understaffing, prison officials also assign "gang inmates and other orderlies with much influence" to help with duties ordinarily assigned to prison guards. *Id.* at 12. According to Plaintiff, "[t]hese inmates are being allowed to come in and go out the tier at will," they "are never searched by staff," they pass drugs and weapons to other inmates "which causes much of the violence on the Tier," and they also act violently toward other inmates. *Id.* Plaintiff also contends that Defendant Troutman at MSP encourages inmates to harm inmates that have offended her. *Id.* at 13-14. Prison officials further fail to comply with GDC policies and procedures that require them to document each inmate injury, death, or other unusual occurrence on the Tier. *Id.* at 14.

Altogether, Plaintiff alleges he witnessed "at least 15 inmates death" at both MSP and TSP between April 2023 until February 2025, and it appears 9 of those deaths occurred while Plaintiff was at MSP. Recast Compl. 14 (alleging that 6 deaths occurred since he has been at TSP). Plaintiff also contends he was attacked at least twice at MSP. *Id.* at 10, 14. Plaintiff avers that he complained about these issues to each of the MSP Defendants and Defendant Oliver verbally and via "letters, medical reports, e-mails," and grievance filings, but they have not done anything despite it being their responsibility to take action. *Id.* at 17. At this early stage, these allegations are sufficient to state a claim that the MSP Defendants and Defendant

Oliver were deliberately indifferent to Plaintiff's safety at MSP. *See, e.g.*, *Dickinson*, 833 F. App'x at (inmate stated actionable claim where he alleged that "overcrowding, failure to identify and segregate violent inmates, failure to properly search inmates, failure to limit contraband and failure to adequately supervise inmates" were "specific features of the facility that render[ed] it particularly violent"). These claims shall therefore proceed for further factual development.

Plaintiff also appears to raise "particularized risk" claims. Plaintiff contends he "was injured by inmates he was forced to live with" at MSP on or about September 16, 2023 and February 21, 2024. Recast Compl. 10. He thus requested protective custody at MSP on March 5, 2024 "for safety reasons." *Id.* at 9. Plaintiff states Defendant Troutman knew of his request for protective custody and Plaintiff's previous altercation with his cellmate, but she again placed Plaintiff in the same cell with this individual. *Id.* These allegations are sufficient to permit Plaintiff's claims that Defendant Troutman was deliberately indifferent to a particularized risk to Plaintiff's safety at MSP to proceed for further factual development. *Cf. McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that prisoner failed to state an actionable deliberate indifference claim where prisoner failed to inform prison officials of any "specific prior incident[] from which the defendant could infer that a substantial risk existed").

Plaintiff further contends that Defendants Black, Pope, McDaniel, Hudson, Jefferies, and Troutman make up the MSP classification department and that Jefferies and McDaniel oversee the protective custody process. Recast Compl. 9.

16

Plaintiff alleges facts indicating that Defendant Jefferies saw Plaintiff's request for protective custody, and he contends Defendant Black was aware of a grievance Plaintiff filed on March 20, 2024 concerning his placement in "a no lighted cell with another inmate," apparently, the inmate who had previously attacked him. *Id.* These allegations are also sufficient, at this early stage, to suggest that Defendants Jefferies and Black may have been deliberately indifferent to a particularized risk to Plaintiff's safety. These claims shall proceed for further factual development along with Plaintiff's claims against Defendant Troutman. Plaintiff does not, however, allege that the remaining members of the classification committee—Defendants Pope, McDaniel, or Hudson—actually saw Plaintiff's request for protective custody or any related grievances and failed to act on them. Plaintiff therefore failed to state an actionable deliberate indifference claim against these three Defendants based on a "specific threat" theory, and any such claims should be dismissed without prejudice.

### 2. *Conditions-of-Confinement Claims*

Plaintiff's next set of claims centers on the physical conditions of his confinement in the Tier unit at MSP. First, Plaintiff contends the cells in which he was housed at MSP did not have sufficient lighting. Under the Eighth Amendment, the State is obligated to care for inmates' "basic human needs," to include adequate shelter. *See, e.g.*, *Helling v. McKinney*, 509 U.S. 25, 33 (1993). "Adequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment." *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985).

A conditions-of-confinement claim has both objective and subjective components. *Christmas v. Nabors*, 76 F.4th 1320, 1331 (11th Cir. 2023). To state a prison conditions claim, an inmate must first show that the deprivations he suffers are objectively and sufficiently serious or extreme so as to constitute a denial of the "minimal civilized measure of life's necessities." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834). This standard is only met when the challenged conditions present "'an unreasonable risk of serious damage to [the prisoner's] future health' or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting *Helling*, 509 U.S. at 33), or if society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling*, 509 U.S. at 36.

To meet the subjective standard in a prison conditions case, a plaintiff must show that the prison official acted with deliberate indifference. *Thomas*, 614 F.3d at 1304. The standard for deliberate indifference is the same as explained above: the plaintiff must allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 839).

In this case, Plaintiff alleges he was housed at MSP from March 5, 2024 until the date his original Complaint was filed, on or about April 24, 2024, in a "cell with no lights and a painted window that blocks out the light from the outside except for the little provided in the day time which light comes more from a tray flap or slide

18

window on the cell door when opened." Recast Compl. 9. Plaintiff's allegations that his cell light did not work for approximately 50 days, that he had no access to natural light because of the painted window, and that the only time he had any limited light in his cell was when his tray flap was opened are sufficient at this early stage to allege an objectively serious condition. *See, e.g., Powell v. Washington*, 720 F. App'x 222, 228 (6th Cir. 2017) (holding that "alleged deprivation of adequate lighting in [inmate's] cell for thirty-five days is sufficiently extreme to state an Eighth Amendment claim"). Plaintiff also contends he informed Defendants Troutman, Pope, McDaniels, Black, and Jefferies about the problems with his light, that these individuals could have seen that there was no light as they were making their rounds, and that other inmates advised these individuals about problems with their lights. Recast Compl. 9. Plaintiff further contends that these Defendants told Plaintiff and other inmates that "maintenance staff would be sent to fix the issues but never have." *Id.* Additionally, Plaintiff contends he wrote Defendant Oliver "many letters" concerning the conditions of his confinement, and an individual who appears to be a relative of Plaintiff also "forward[ed] several emails" to Defendant Oliver about the "syst[e]mic safety and health issues being experienced by" Plaintiff, but Defendant Oliver "failed to take action to fix the issues . . . and the issues continue to exist." *Id.* at 16. At this early stage, these allegations are sufficient to show that each of these Defendants was deliberately indifferent. *Powell*, 720 F. App'x at 228-29 (holding prison officials "were deliberately indifferent to [inmate's] repeated requests to fix the

faulty lighting in his cell"). Plaintiff's Eighth Amendment claims concerning the lighting in his cell at MSP shall therefore proceed against these Defendants.

Plaintiff also briefly mentions that because MSP is short-staffed, inmates have been denied adequate bedding and clothing. Recast Compl. 13. Plaintiff, however, has not explained why these deprivations were sufficiently serious or extreme as to amount to a constitutional violation, pleaded facts associating any named Defendant with these deprivations, or even alleged that he was actually deprived of bedding or clothing. Any Eighth Amendment conditions-of-confinement claims Plaintiff intended to raise concerning these alleged deprivations should therefore be dismissed without prejudice. *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation).

### 3. *Excessive Force*

Plaintiff next contends that prison officials at MSP often use unlawful or excessive force, and he contends Defendants Troutman, McDaniels, Hudson, and Pope are responsible for allowing their subordinates to persist in this practice. Recast Compl. 10-11. Plaintiff also contends that MSP officials do not follow use-of-force policies because they refuse to take inmate statements, use cameras to record their interactions with inmates, check existing camera footage for problematic interactions, or file reports or otherwise log any uses of excessive force. *Id.* at 11. In addition, Plaintiff contends MSP officials use chemical spray or tasers "in non[-]emergency situations" and do not ensure that inmates receive proper medical care

after their use.  *Id.*  Plaintiff further contends unspecified individuals at MSP used excessive force on him on August 3, 2023.  *Id.*

The Eighth Amendment's prohibition against cruel and unusual punishment forbids the "unnecessary and wanton infliction of pain," including the use of excessive force.  *Moore v. Hunter*, 847 F. App'x 694, 697 (11th Cir. 2021) (quoting *Thomas*, 614 F.3d at 1303).  An excessive force claim in the prison context "requires a two-prong showing: an objective showing of a deprivation or injury that is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official had a sufficiently culpable state of mind."  *Id.* (quoting *Thomas*, 614 F.3d at 1304).

The objective showing "is responsive to contemporary standards of decency," and thus even "a de minimis use of force is cognizable under the Eighth Amendment if it is 'repugnant to the conscience of mankind.'"  *Moore*, 847 F. App'x at 697 (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010)).  To show subjective intent, the prisoner must show that a prison official applied force to a prisoner "maliciously and sadistically to cause harm" rather than "in a good faith effort to maintain or restore discipline."  *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)); *Williams v. Radford*, 64 F.4th 1185, 1196 (11th Cir. 2023).  To determine whether force was applied maliciously or sadistically to cause harm, the court considers factors which include:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any

> efforts made to temper the severity of a forceful response; and (5) the
> extent of the threat to the safety of staff and inmates, as reasonably
> perceived by the responsible officials on the basis of facts known to them.

*Williams*, 64 F.4th at 1196-97 (quoting *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th

Cir. 1999)).

Plaintiff's conclusory allegations regarding excessive force fail to state an

actionable claim. Plaintiff does not provide any details about the alleged use of

excessive force against him on August 3, 2023 that could allow the Court to conclude

that prison officials applied force maliciously and sadistically to cause him harm.

Indeed, Plaintiff does not provide *any* specific details about any alleged use of

excessive force at MSP. Rather, Plaintiff's allegations are simply that prison officials

at MSP failed to follow applicable policies and procedures regarding their uses of

force. *See, e.g.*, Recast Compl. 12. While these allegations could perhaps be relevant

to determine whether the MSP Defendants should be liable for a particular use of

force incident, they do not state a claim absent further context. *Taylor v. Adams*, 221

F.3d 1254, 1259 (11th Cir. 2013) (holding that the "failure to follow procedures does

not by itself, rise to the level of deliberate indifference because doing so is at most a

form of negligence"). These claims should be dismissed without prejudice.

### 4. Grievance Procedures

Plaintiff next suggests that the MSP Defendants should be liable for failing to

follow the prison's grievance procedures. Recast Compl. 12. These allegations also

fail to state a constitutional claim. Plaintiff does not have any due process right to

access a prison's grievance procedure or have those procedures properly followed.

*See, e.g., Bingham v. Thomas*, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (affirming dismissal of prison's claims that he was denied use of the prison's grievance procedure); *Dunn v. Martin*, 178 F. App'x 876, 878 (11th Cir. 2006) (holding that "a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure"). To the extent Plaintiff is seeking to raise such a claim in this action, it should be dismissed without prejudice.

### 5. *Medical Treatment*

Finally, Plaintiff asserts that he has been denied adequate medical treatment at MSP for "issues related to HepB, and liver issues." Recast Compl. 15-16. He states that he has never "been seen for sick calls within 24 hrs of filing, had liver test, STD test, blood work taken for food poisoning, been evaluated for food poisoning, or provided medical treatment for herpes that may be related to issues with [his] liver etc." *Id.* at 15. Plaintiff also identifies at least one other inmate who Plaintiff believes did not receive adequate medical treatment while at MSP. *Id.* at 15-16. The only MSP Defendant Plaintiff mentions with respect to his medical treatment claims is Defendant Jefferies. *Id.* at 15.

A prison official who is deliberately indifferent to an inmate's serious medical needs violates the Eighth Amendment to the United States Constitution. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). To state an Eighth Amendment claim in this context, a plaintiff must allege facts sufficient to establish: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and

(3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

The first element is objective and requires a plaintiff to set forth a "serious medical need," which is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (citation omitted). A serious medical need can also arise if "a delay in treating the need worsens the condition." *Mann,* 588 F.3d at 1307. "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at 1243). The standard for the second element, deliberate indifference, again requires Plaintiff to allege facts that show that Defendants were subjectively aware of a risk of substantial harm but disregarded that risk by acting with subjective recklessness. *Wade*, 106 F.4th at 1255.

Plaintiff has not pleaded facts sufficient to show that Defendant Jefferies was deliberately indifferent to any of his serious medical needs. First, Plaintiff has not adequately pleaded that he had an objectively serious medical need. Plaintiff does not explain what "issues" he is having "related to HepB" or his liver. Recast Compl. 15.[5] He does not allege that he suffered from food poisoning at MSP or explain why

---

[5] The Court recognizes that a condition like hepatitis can amount to a serious medical need. *See, e.g., Mitchell v. Nobles*, 873 F.3d 869, 876 (11th Cir. 2017). It appears, however, that Plaintiff is not alleging that prison officials have not been treating or monitoring his hepatitis, but rather that they have not been treating other problems that Plaintiff believes are linked to his hepatitis. Without some explanation of what the "issues related" to hepatitis (or any other disease) entail, Plaintiff fails to state a claim. The Court also notes that some chronic conditions may not require treatment other than routine monitoring to determine whether the condition warrants medical intervention or treatment of associated symptoms. *See, e.g., Hoffer v. Sec'y*, 973 F.3d 1263, 1273 (11th Cir. 2020) (noting that "diagnosing, monitoring, and managing conditions—even where a complete cure may be available—

any bout of food poisoning he experienced was a serious medical need. He does not clearly allege that he was actually diagnosed with herpes, nor does he state he was suffering from a herpes outbreak or any other symptoms related to herpes. *Cf., e.g., Williams v. Pa. Dep't of Corr.*, No. 3:18-CV-01150, 2019 WL 1429349, at *3 (M.D. Pa. Mar. 29, 2019) (finding that "untreated herpes caus[ing] sores, scabbing, and 'perpetual pain' that at least one medical professional deemed significant enough to require treatment" qualified as a serious medical need). Finally, Plaintiff also neglects to explain what serious medical need required treatment within 24 hours or provide any other reason why the failure to provide him with a sick-call appointment within 24 hours could state an actionable claim.

In short, Plaintiff does not describe any symptoms of any of the conditions from which he alleges he suffered nor does he explain what treatment he required but did not receive. Absent additional facts explaining his diagnoses and an explanation of why those diagnoses—particularly if asymptomatic—amounted to serious medical needs, Plaintiff fails to state an actionable medical treatment claim against Defendant Jefferies. *Twombly*, 550 U.S. at 555. These claims should likewise be dismissed without prejudice.

---

will often meet the 'minimally adequate medical care' standard that the Eighth Amendment imposes" (citation omitted)); *see also Black v. Ala. Dep't of Corrs.*, 578 F. App'x 794, 795 (11th Cir. 2014) (holding prison officials were not deliberately indifferent to inmate's chronic Hepatitis C infection where inmate's liver function was "routinely monitored" to determine whether condition warranted further treatment, but "none of the results showed any developing problems with regard to the virus").

**CONCLUSION**

For the foregoing reasons, Plaintiff's pending motions to proceed *in forma pauperis* (ECF Nos. 2, 11) are **GRANTED**, but it is **RECOMMENDED** that Plaintiff's claims arising from his treatment at TSP be **DISMISSED without prejudice** for improper joinder. The following claims shall proceed for further factual development: (1) claims that Defendants McDaniel, Jefferies, Black, Pope, Troutman, Hudson, and Oliver were deliberately indifferent to the dangerous conditions at MSP; (2) claims that Defendants Troutman, Black, and Jefferies were deliberately indifferent to his safety when they denied his requests for protective custody at MSP; and (3) claims regarding insufficient lighting against Defendants Troutman, Pope, McDaniels, Black, Jefferies, and Oliver. It is **RECOMMENDED** that his remaining claims against those Defendants be **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. Plaintiff's "Motion for Entry of Filing by Clerk" (ECF No. 26) is **DENIED as moot.**

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the

provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants McDaniel, Jefferies, Black, Pope, Troutman, Hudson, and Oliver, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.  Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  All Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial

when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby**

28

**advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each

party.  No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 4th day of August, 2025.

 s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE